## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| **J'ON STATON,** as a Representative of the Estate of **MALCOLM TRIESTE STATON,** and on behalf of his minor children; and **CREE FAULKNER,** Individually, | ) ) ) ) | **CIVIL ACTION FILE NO:** _____ |
| **Plaintiffs,** | ) ) ) | |
| v. | ) ) | |
| **EDDIE CATHEY**, in his Individual and Official Capacity as Sheriff of Union County Sheriff's Office; **CHRISTOPHER J. HICKS**, in his Individual Capacity as a Deputy of the Union County Sheriff's Office; **NICHOLAS J. KIRKLEY**, in his Individual Capacity as a Deputy of the Union County Sheriff's Office, **CHRISTOPHER B. LITTLE**, in his Individual Capacity as a Deputy of the Union County Sheriff's Office; and **COREY J. WILLIAMS**, in his Individual Capacity as a Deputy of the Union County Sheriff's Office, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | *Jury Trial Demanded* |
| **Defendants.** | ) ) ) | |

---

## COMPLAINT FOR DAMAGES

**NOW COMES** Plaintiffs, J'ON STATON, as a Representative of the Estate of MALCOM TRIESTE STATON, and on behalf of his minor children; along with CREE FAULKNER, Individually, and hereby file their *Complaint for Damages*, as

follows:

## <u>INTRODUCTION</u>

This is a civil rights lawsuit seeking damages under North Carolina and federal law for the wrongful death of MALCOLM STATON and the illegal arrest of CREE FAULKNER. On March 15, 2022, Defendants NICHOLAS KIRKLEY, CHRISTOPHER LITTLE, COREY WILLIAMS, and BRIAN LITTLE, as sworn deputies with the Union County Sheriff's Office, while acting individually and in concert as joint tortfeasors, caused the shooting death of MACOLM STATON and the false arrest and imprisonment of CREE FAULKNER. The actions of these deputies violated clearly established statutory and constitutional law including the Fourth Amendment of the United States Constitution.

## <u>JURISDICTION AND VENUE</u>

1.

This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments of the Constitution of the United States as applied to the State of North Carolina and its entities, officials, and employees, as well as the statutes and common law of the State of North Carolina.

2.

This Court has original jurisdiction over Plaintiffs' claims pursuant to 28

U.S.C. §§ 1331 and 1343(a)(3) because they arise out of 42 U.S.C. §1983 and 1988. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and Plaintiffs' and Defendants have complete diversity.

3.

This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to Plaintiffs' §1983 claims, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

4.

Venue is proper in the Western District of North Carolina, Charlotte Division pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claim occurred in Union County, North Carolina.

## IDENTIFICATION OF PARTIES

5.

Plaintiff J'ON STATON is, and at all relevant times, was a citizen of the United States residing at 5704 Austin Grove Church Road, Marshville, North Carolina 28103. Plaintiff STATON brings this action in a representative capacity, having filed an application in Lancaster County, South Carolina (Case No. 2024-

ES-29-00171) for appointment to serve as administrator of the estate of her deceased son, MALCOM STATON, who at the time of his death resided at 6401 N. Matson Street, Kershaw, South Carolina 29067.

6.

Plaintiff CREE FAULKNER (hereinafter "MS. FAULKNER"), is, and at all relevant times, was a citizen of the United States and residing at 650 Price Cemetery Road, Pageland, South Carolina 29728.

7.

Defendant EDDIE CATHEY (hereinafter referred to as "Defendant CATHEY") is, and at all relevant times, was the Sheriff of the Union County Sheriff's Office ("UCSO"), with supervisory and managerial authority over all Union County Sheriff's Office deputies.

8.

In his role as Sheriff, Defendant CATHEY was ultimately responsible for the management and operation of UCSO, which is responsible for the enforcement of North Carolina state and local laws and ordinances within Union County, and the orchestration and oversight of criminal investigations.

9.

As Sheriff, Defendant CATHEY is an independently elected constitutionally

mandated public official who employs deputies who function as representatives of the Sheriff. See N.C. Const. art VII §2 and N.C.G.S. § 162-1. As such, Defendant CATHEY is liable for the acts or omissions of his deputies as he is for his own.

10.

Defendant CATHEY is a resident and citizen of the State of North Carolina and may be served with process in his individual and official capacities at his place of work located at 3344 Presson Road, Monroe, North Carolina 28112. Jurisdiction and venue are proper as to Defendant CATHEY.

11.

Defendant CHRISTOPHER HICKS (hereinafter referred to as "Defendant HICKS") is, and at all relevant times was, a sworn deputy of the UCSO, responsible for policing Union County under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of North Carolina and the UCSO.

12.

The actions of Defendant HICKS that are the subject of this Complaint were undertaken in the regular course of his employment as a deputy of UCSO. Defendant HICKS is sued in his individual capacity, and based on his actions described herein, is not entitled to a defense of qualified immunity or public

5

official immunity.

13.

Defendant HICKS is a resident and citizen of the State of North Carolina and may be served with process at his personal place of residence located at 316 Seven Oaks Drive, Monroe, North Carolina 28110-8915. Jurisdiction and venue are proper as to Defendant HICKS.

14.

Defendant NICHOLAS KIRKLEY (hereinafter referred to as "Defendant KIRKLEY") is, and at all relevant times was, a sworn deputy of the UCSO, responsible for policing Union County under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of North Carolina and the UCSO.

15.

The actions of Defendant KIRKLEY that are the subject of this complaint were undertaken in the regular course of his employment as a deputy of UCSO. Defendant KIRKLEY is sued in his individual capacity, and based on his actions described herein, is not entitled to a defense of qualified immunity or public official immunity.

16.

Defendant KIRKLEY is a resident and citizen of the State of North Carolina and may be served with process at his personal place of residence at 74 Bennett Heights Road, Monroe, North Carolina 28170-8400. Jurisdiction and venue are proper as to Defendant KIRKLEY.

17.

Defendant CHRISTOPHER LITTLE (hereinafter referred to as "Defendant LITTLE") is, and at all relevant times was, a sworn deputy of UCSO, responsible for policing Union County under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of North Carolina and the UCSO.

18.

The actions of Defendant LITTLE that are the subject of this Complaint were undertaken in the regular course of his employment as a deputy of UCSO. Defendant LITTLE is sued in his individual capacity, and based on his actions described herein, is not entitled to a defense of qualified immunity or public official immunity.

19.

Defendant LITTLE is a resident and citizen of the State of North Carolina

and may be served with process at his personal place of residence at 823 Gemcrest Drive, NE, Conover, North Carolina 28613-1766. Jurisdiction and venue are proper as to Defendant LITTLE.

20.

Defendant COREY WILLIAMS (hereinafter referred to as "Defendant WILLIAMS") is, and at all relevant times was, a sworn deputy of UCSO, responsible for policing Union County under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of North Carolina and the UCSO.

21.

The actions of Defendant WILLIAMS that are the subject of this complaint were undertaken in the regular course of his employment as a deputy of the UCSO. Defendant WILLIAMS is sued in his individual capacity, and based on his actions described herein, is not entitled to a defense of qualified immunity or public official immunity.

22.

Defendant WILLIAMS is a resident and citizen of the State of North Carolina and may be served with process at his personal place of residence at 4222 Richardson Road, Monroe, North Carolina 28112-9393. Jurisdiction and venue are

proper as to Defendant WILLIAMS.

## STATEMENT OF FACTS

### 23.

The events surrounding this incident were investigated by the North Carolina Bureau of Investigation (SBI) and turned over to Union County District Attorney's Office for review. However, as of the filing of this lawsuit, counsel for Plaintiffs have been denied access or production to any of the evidence obtained as part of this investigation, including any video footage of the incident,[1] as well as documentation identifying the actions and identities of the UCSP deputies involved in this incident.[2]

---

[1] On April 1, 2022, Plaintiff Cree Faulkner filed a *Petition for Release of Custodial Law Enforcement Agency Recording* requesting the opportunity to review any UCSO officer body camera and dash camera footage. See **Exhibit 1**, attached. On May 5, 2022, Shean Williams, an attorney from the Cochran Firm involved in the representation of Plaintiffs, filed a *Request to Law Enforcement Agency to Disclose Recording of Death or Serious Bodily Injury* specifically requesting "any and all recordings including but not limited to body cam and Dash cam footage from any and all officers, sheriffs, and/or deputies, involved in the incident." See **Exhibit 2**, attached. On July 18, 2022, Judge Hunt Quinn of Union County Superior Court issued an *Order on Petition for Review of Request to Disclose Recording of Death or Serious Bodily Injury*, on the stated grounds that "[n]one of the videos as viewed by the Court in camera depict anything other than what occurred after Mr. Staton's injuries were sustained" and "Mr. Staton's image and voice do not appear on the videos" and "[t]hus, the videos do not depict the death or serious injury to Mr. Staton as defined by NCGS 13201.4(A)(b1)." See **Exhibit 3**, attached.

[2] On April 28, 2022, the Cochran Firm Atlanta submitted a public records request to Defendant Eddie Cathey requesting the identity of the deputies involved in this incident, documents relating to any UCSO investigations into this incident, as well as personnel, training and disciplinary files relating to the deputies involved in this incident. See **Exhibit 4**, attached. In response to this request, Defendant Cathey stated that the above-requested information "may only be obtained via a court order," citing N.C.G.S. Section 153A-98(c)(4). See **Exhibit 5**, attached.

24.

According to a Facebook statement from UCSO, this incident occurred when "a Union County Sheriff's Office deputy attempted to conduct a traffic stop on a sedan parked in the parking lot of the Sunny Food Mart" and as "the deputy initiated the traffic stop, the driver of the suspect vehicle attempted to flee by using his vehicle to strike at least three UCSO deputy vehicles involved with the traffic stop." See Facebook, March 16, 2022, Union County Sheriff's Office, Monroe, NC, attached as **Exhibit 6**.

25.

On March 15, 2022, at approximately 7 p.m., MR. STATON and MS. FAULKNER drove in her 2009 Honda Accord to Sunny Food Mart ("the store") located in Union County at 1800 Walkup Ave., Monroe, North Carolina 28110.

26.

Upon information and belief, Defendants HICKS, WILLIAMS, LITTLE and KIRKLEY, were participating in an undercover drug investigation and suspected that MR. STATON had drugs on his person or in the vehicle which is why they attempted to detain him.

27.

When they arrived at the store, MR. STATON was driving, and MS.

FAULKNER was sitting in the front passenger seat, while her and MR. STATON's two minor children, L.S. age 3, and K.S. age 2, were seated in the back of the car, along with MS. FAULKNER's minor son, G.L. age 5.

28.

Once they arrived at the store, MR. STATON parked, got out of the Honda, and entered the store, leaving MS. FAULKNER and the children in the vehicle.

29.

Shortly after entering the store, MR. STATON returned to the vehicle to get more money from MS. FAULKNER for his purchase, and then went back into the store.

30.

After coming out of the store with his purchases, MR. STATON got back into the Honda with MS. FAULKNER and the children, turned the car on and attempted to drive out of the store's parking lot, just prior to MR. STATON'S encounter with Defendant deputies.

31.

Video footage from the store shows that this incident "starts with an unmarked car with blue lights pulling up to the side of Malcolm Staton's Honda Accord" at which point "[t]he officer jumps out and Staton backs up as another

officer pulls behind him." See, *Video shows moments before deputies shot, killed man in Monroe; family demands answers*, WSOC-TV, by John Paul, April 29, 2022; attached as **Exhibit 7**.

32.

The video shows that "Staton drives around the first car, and another unmarked car can be seen speeding into view to block him" and "[t]hen, a pickup truck slams into the back of Staton's car." *Id.* See video at: https://www.wsoctv.com/news/local/community-gathers-monroe-protest-deadly-deputy-involved-shooting-food-mart/OQHWU4KXABGAHIUHSFTZ444X3A/.

33.

Upon information and belief, Defendant HICKS, WILLIAMS, and LITTLE were occupying the unmarked vehicles that can be seen in the above-referenced video attempting to block MR. STATON from driving out of the parking lot, by positioning their vehicles to each side of the Honda, and then rear-ending the vehicle in a pickup truck.

34.

Although not shown in the above-referenced video, as Defendants HICKS, WILLIAMS, and LITTLE are attempting to block the Honda from leaving the store's parking lot, an unmarked van pulls up and joins in the attempt to block the

Honda by pulling in front of the Honda.

35.

Upon information and belief, Defendant KIRKLEY was observing the events unfold from across the street and was the driver of the unmarked van that pulled in front of the Honda joining Defendants HICKS, WILLIAMS, and LITTLE in their attempt to block the Honda from leaving the parking lot.

## USE OF DEADLY FORCE BY DEFENDANT KIRKLEY

36.

After pulling in front of the Honda, Defendant KIRKLEY exited his vehicle and began shooting into the Honda multiple times, striking both the vehicle and MR. STATON.

37.

The Honda that MR. STATON was driving at the time of this incident was owned by MS. FAULKNER, who was contacted by the UCSO to retrieve the vehicle, at which time she took photographs showing the multiple gunshot holes in the vehicle and resulting damage. See Photo of bullet hole to the right back passenger window, attached as **Exhibit 8**; Photo of bullet hole to above the driver's side door, attached as **Exhibit 9**; Photo of driver's side window shot out, attached as **Exhibit 10**; Photo of bullet hole in the back passenger door, attached as

**Exhibit 11**; and Photo of two bullet holes in the front windshield, attached as **Exhibit 12**.

38.

As a direct and proximate result of Defendant KIRKLEY shooting multiple times into the Honda, with the intent to strike and detain MR. STATON, several bullets struck MR. STATON, twice in the back of the head, and once on the side of his head, resulting in his death on March 17, 2022.

39.

After being shot, MR. STATON was handcuffed, provided with medical treatment on the scene by EMT's and then transported to Atrium Health Carolinas Medical Center in Charlotte for treatment relating to his gunshot injuries.

40.

As a direct and proximate result of Defendant KIRKLEY shooting at and into the Honda, MS. FAULKNER was grazed by a bullet across her right breast, causing an open wound and permanent scarring which required medical treatment.

41.

As a result of being shot in the head by Defendant KIRKLEY, blood from MR. STATON's gunshot wounds splattered on the face and clothing of MR. STATON and MS. FAULKNER's children in the back seat of the Honda.

## UCSO'S USE OF FORCE POLICY

### 42.

UCSO's "Use of Force" policy states that "[n]o deputy shall use physical force greater than reasonably necessary to accomplish a lawful detention or custodial transfer, effect a lawful arrest, or to protect the officer or a third person against unlawful assault, battery, threat of death or serious bodily injury." See UCSO, Standards Operating Procedure, Use of Force, attached as **Exhibit 13**.

### 43.

UCSO's policy provides that an "officer may use only that force which a reasonably intelligent and well-trained officer would use under the same or similar circumstances," and allows an officer to "escalate their use of force when a lower force option has failed or when a lower force option would be clearly ineffective." *Id.* at Page 2.

### 44.

UCSO's policy states that "[f]orce cannot be used to effect an unlawful arrest, because an individual may resist an unlawful arrest as long the resistance is not excessive." *Id.*

45.

UCSO defines "deadly force" as "the use of a weapon or hands-on technique/tactic, which by its very nature or design may cause death or serious bodily injury or the use of an object, when used in a particular manner, may cause death or serious injury." *Id.* at Page 3.

46.

According to UCSO's policy, the "[s]afeguarding of human life shall always be a paramount consideration in deciding whether deadly force should be used." Further, UCSO's policy provides that "an officer is justified in the use of deadly force upon another person only when it is reasonably necessary to accomplish one of the following."

1. To defend himself or herself or a third person from what they reasonably believe to be the imminent use of deadly physical force.

2. To effect the arrest or to prevent the escape from custody of a person they reasonably believe is attempting to escape by means of a deadly weapon, or who by their conduct or others means indicates that they present an imminent threat of death or serious physical injury to others unless apprehended without delay.

*Id.*

47.

According to UCSO's policy, "[w]eapons may be fired at the driver or other occupant of a moving vehicle only when the officers have probable cause to

believe that the subject poses an imminent danger of death or serious bodily harm to the officers or other persons."  Furthermore, UCSO's policy stresses that "**[t]he use of deadly force in this case shall not create a danger to the public that outweighs the likely benefits of its use**" and that "**[u]nder no circumstances should an officer attempt to disable a vehicle by discharging a firearm at the engive or other area of the vehicle**."  *Id.* at Page 8 (emphasis in original).

48.

UCSO's policy prohibits "[f]iring at vehicles solely for the purpose of disabling a moving vehicle." *Id.*

49.

At no point during this incident did MR. STATON drive the Honda in a manner that was negligent, reckless, or intended to cause death or serious injury to Defendant KIRKLEY, any of the officers, or any civilian bystanders.

50.

At no point during this incident did MR. STATON use, threaten, or intend to inflict deadly force or serious injury to Defendant KIRKLEY, any of the officers, or any civilian bystanders.

51.

As Defendant KIRKLEY fired multiple shots into the Honda, his actions

were not for the purpose of protecting himself, other officers, or civilian bystanders from being struck by the Honda, but was for the purpose of stopping and detaining MR. STATON, based on an unjustified suspicion that he possessed drugs.

52.

At no point during Defendant KIRKLEY's discharge of his weapon were any civilian bystanders or deputies, including Defendant KIRKLEY, in the path of the oncoming Honda such that they were facing an imminent threat of death or bodily injury or could not otherwise have taken reasonable steps to move out of the way of the Honda.

53.

At no point during this incident did MR. STATON or MS. FAULKNER attempt to exit the Honda or do anything that was threatening towards the officers or anyone on the scene.

54.

At no point during this incident did Defendants have or obtain a warrant or probable cause to believe that MR. STATON and/or MS. FAULKNER were committing a crime or had committed any crimes.

55.

The actions of Defendant KIRKLEY in shooting at and into the Honda were

in violation of UCSO's policy regarding use of deadly force because there was no probable cause to believe that MR. STATON or MS. FAILKNER posed an imminent danger of death or serious bodily harm to the officers on the scene or any other persons.

56.

The actions of Defendant KIRKLEY in shooting at and into the Honda were in violation of UCSO's policy regarding use of deadly force because Defendant KIRKLY fired at and into the vehicle for the purpose of disabling the vehicle to detain MR. STATON.

57.

Following this incident, no firearms or illegal weapons were found on MR. STATON, nor were any illegal drugs found in the vehicle.

## ARREST AND INTERROGATION OF
## CREE FAULKNER

58.

After MR. STATON was shot, Defendant HICKS, WILLIAMS, LITTLE and KIRKLEY ordered MS. FAULKNER out of the vehicle, commanded her to get on the ground, and placed her in handcuffs, and had her transported to UCSO.

59.

Following her detention and arrest on the scene, MS. FAULKNER was

transported in handcuffs to UCSO in an unmarked van.

60.

While at the Sheriff's office, MS. FAULKNER remained in handcuffs and was placed into an interrogation room for about 10-15 minutes.

61.

Shortly after being placed into the interrogation room in handcuffs, MS. FAULKER was relocated to a conference room at UCSO, where her handcuffs were removed, and she was questioned by two SBI agents for about 45 minutes.

62.

After being questioned by the SBI agents, MS. FAULKER was released without being charged.

## FEDERAL CLAIMS

## COUNT I

**Unreasonable and Excessive Force Against Malcolm Staton and Cree Faulkner in Violation of the Fourth Amendment and 42 U.S.C. § 1983**

**(Defendant KIRKLEY)**

63.

Plaintiffs hereby incorporates and re-alleges each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

64.

Under the Fourth Amendment to the United States Constitution, MR. STATON and MS. FAULKNER have the constitutional right to be free from unreasonable seizures, which includes seizures accomplished by excessive force. See *Jones. v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003).

65.

MR. STATON and MS. FAULKNER were seized within the meaning of the Fourth Amendment when Defendant KIRKLEY shot multiple times into the Honda, which amounted to a "show of authority" with an "intent to retrain" that resulted in the "termination of [their] freedom of movement." See *Torres v. Madrid*, 141 S. Ct. 989, 1001 (2021).

66.

The United States Supreme Court had held that test for whether force employed by an officer to accomplish a seizure is excessive is one of "objective reasonableness under the circumstances." See *Graham v. Connor*, 490 U.S. 286, 399 (1989). In determining whether force was excessive, a court must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Id.* at 296.

67.

Although an officer's actions in creating a dangerous situation leading to the use of force is not relevant to the Fourth Amendment analysis, the reasonableness of an officer's actions in using force is determined based on the information possessed by the officer at the moment the force is employed. See *Elliottt v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996).

68.

The Supreme Court has held that "the intrusiveness of a seizure by means of deadly force is unmatched." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). An officer may use deadly force only if the officer has "probable cause to believe that the suspect poses a threat of serious bodily harm, either to the officer or to others." *Id.* at 11.

69.

At the time Defendant KIRKLEY shot multiple times into the Honda striking MR. STATON several times in the head, there was no reasonable basis for Defendant KIRKLEY to conclude that MR. STATON posed a threat of serious physical harm to him, or any of the officers' present on the scene. See *Waterman v. Batton*, 393 F.3d 471, 477-478 (4th Cir. 2005).

70.

At the time Defendant KIRKLEY shot multiple times into the Honda striking MR. STATON several times in the head, it was clear that MR. STATON was not attempting to use the Honda as a deadly weapon to assault or injure the officers but was attempting to flee and drive out of the parking lot of the store.

71.

At the time of this incident, it was clearly established that using deadly force by shooting into a moving vehicle was unconstitutional and in violation of the Fourth Amendment where the facts show that the suspect was not attempting to use his vehicle as a deadly weapon and where no officers, or any others, were in the trajectory of the suspect's vehicle such that they faced an immediate threat of serious injury or death.  See *Calliste v. City of Charlotte*, 2023 U.S. Dist. LEXIS 174528 * (W.D.N.C. Sept. 28, 2023), *Williams v. Strickland*, 917 F.3d 763, 768-769 (4th Cir. 2019), and *Waterman v. Batton*, 393 F.3d 471, 477-478 (4th Cir. 2005).

72.

Defendant KIRKLEY was acting under the color of North Carolina state law and under the policies of UCSO when he employed deadly force upon MR. STATON.

73.

Defendant KIRKLEY use of deadly force against MR. STATON was unreasonable and in violation of UCSO's "Use of Force" policy because MR. STATON was unarmed and posed no imminent threat to Defendant KIRKLEY, the other officers present, or anyone else.

74.

A reasonable law enforcement officer would have known that Defendant KIRKLEY's discharge of his weapon was objectively unreasonable and violated MR. STATON's right to be free from unreasonable and excessive force.

75.

Upon information and belief, Defendant KIRKLEY discharged his weapon for the purpose of attempting to disabling the vehicle so that MR. STATON could be detained and arrested – and was not for the purpose of protecting himself or anyone else from risk of death or bodily harm.

76.

Defendant KIRKLEY acted under the color of law with malice, deliberate indifference, wantonness, and recklessness, and Defendant KIRKLEY acted with callous and gross disregard for MR. STATON's statutory and constitutional rights.

77.

As a direct and proximate result of Defendant KIRKLEY's violation of MR. STATON's right to be free from unreasonable and excessive force, MR. STATON suffered physical and emotional injuries, and ultimately died from his gunshot injuries after several days in the hospital.

78.

As a direct and proximate result of Defendant KIRKLEY's violation of MR. STATON's right to be free from unreasonable and excessive force, his estate is entitled to recover damages from Defendant KIRKLEY for his medical expenses, physical and emotional pain and suffering, and the full value of MR. STATON's life, and all damages permissible under law.

79.

As a direct and proximate result of Defendant KIRKLEY's violation of MS. FAULKNER'S right to be free from unreasonable and excessive force, MS. STATON suffered physical and emotional injuries from being grazed by one of the bullets fired by Defendant KIRLKEY into the Honda and is entitled to recover damages from Defendant KIRKLEY for her physical and emotional injuries.

80.

The above-described actions of Defendant KIRKLEY were intentional,

malicious, willful, wanton, deliberate, and a callous indifference and reckless disregard for MR. STATON's and MS. FAULKNER's constitutional rights, warranting an award of punitive damages in an amount to be determined at trial.

## COUNT II

**Unlawful Seizure of Malcolm Staton and Cree Faulkner in Violation of the Fourth Amendment and 42 U.S.C. § 1983**

**(Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS)**

81.

Plaintiffs hereby incorporates and re-alleges each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

82.

When Defendants HICKS, WILLIAMS, LITTLE and KIRKLEY used their vehicles to block MR. STATON from driving out of the parking lot, combined with the actions of Defendant KIRKLEY who shot multiple times into the Honda, their actions and show of authority amounted to a seizure of MR. STATON and MS. FAULKNER under the Fourth Amendment.   See *Brendlin v. California*, 551 U.S. 249 (2007).

83.

The initial seizure of MR. STATON and MS. FAULKNER became an arrest after MR. STATON was shot multiple times and MS. FAULKNER was ordered

out of the vehicle and commanded to get on the ground where she was then placed into handcuffs before later being placed into a police car and taken into custody. See *United States v. Cloud*, 2018 U.S. Dist. LEXIS 87531, *8-9 (W.D.N.C. MAY 24, 2018).

84.

Defendants HICKS, WILLIAMS, LITTLE and KIRKLEY's initial detention of MR. STATON and MS. FAULKNER by blocking their vehicle, nor the formal arrest of MR. STATON and MS. FAULKNER that occurred after Defendant KIRKLEY shot multiple times in the vehicle were supported by reasonable suspicion or probable cause as required by the Fourth Amendment.

85.

At the time of their encounter with MR. STATON and MS. FAULKNBER, neither Defendants HICKS, WILLIAMS, LITTLE and KIRKLEY had any credible or reliable evidence that MR. STATON and/or MS. FAULKNER were committing any crimes or were wanted for the commission of any crimes.

86.

MR. STATON and MS. FAULKNER rights secured by the Fourth Amendment to the United States Constitution to be free from unreasonable seizures was violated by Defendants HICKS, WILLIAMS, LITTLE and

KIRKLEY, acting under color of state law as UCSO deputies.

87.

The actions of Defendants HICKS, WILLIAMS, LITTLE and KIRKLEY, as described herein, amounted to an unlawful detention, seizure, arrest, and imprisonment of MR. STATON and MS. FAULKNER, in violation of 42 U.S.C. § 1983.

88.

At the time of this incident, it was clearly established that the Fourth Amendment to the United States Constitution required reasonable articulable suspicion and probable cause to support the detention, seizure, arrest, and imprisonment of MR. STATON and MS. FAULKNER.

89.

As a direct and proximate result of their unlawful detention, seizure, arrest, and imprisonment, MR. STATON and MS. FAULKNER are entitled to recover damages against Defendants HICKS, WILLIAMS, LITTLE and KIRKLEY for their physical and emotional pain and suffering.

**STATE LAW CLAIMS**

**COUNT III**

**Wrongful Death Action Pursuant to N.C.G.S. 28A-18-2(b)**

**(Defendant KIRKLEY)**

90.

Plaintiffs hereby incorporates and re-alleges each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

91.

Pursuant to N.C.G.S. 28A-18-2(b), the Estate of MR. STATON brings this wrongful death against Defendant KIRKLY for his illegal and unjustified use of deadly force, which caused serious injury and the death of MR. STATON.

92.

Under North Carolina law, an officer is authorized to use "deadly physical force upon another purpose… only when it is or appears to be reasonably necessary thereby:

    a. To defend himself or a third person from what he reasonably believes to be the use or imminent use of deadly physical force;
    b. To effect an arrest or to prevent the escape from custody of a person who he reasonably believes is attempting to escape by means of a deadly weapon, or who by his conduct or any other means indicates that he presents an imminent threat of death or serious physical injury to others unless apprehended without delay;

c. To prevent the escape of a person from custody impose upon him as a result of conviction for a felony.

See N.C.G.S. § 15A-401(d)(2).  Use of Force in Arrest – Deadly Force.

93.

Defendant KIRKLEY's deliberate and reckless act of shooting multiple times into and at the Honda, although MR. STATON was unarmed and posed no imminent threat, was committed with the purpose of detaining MR. STATON by preventing him from driving out of the store's parking lot.

94.

Defendant KIRKLEY's deliberate and reckless act of shooting multiple times into and at the Honda, was done with malice and the knowledge and awareness that his actions would likely cause serious injury or death to MR. STATON.

95.

Defendant KIRKLEY's deliberate and reckless act of shooting multiple times into and at the Honda, was not authorized or justified based on any of the circumstances under North Carolina law that authorize the use of deadly force, as set forth in N.C.G.S. § 15A-401(d)(2).

96.

As a direct and proximate result of Defendant KIRKLEY's negligence, gross

negligence, and recklessness, MR. STATON was shot multiple times in the head, experienced conscious pain and suffering, required hospitalization for several days, and died from his injuries, which entitles the representative of his estate to recover damages as set forth in N.C.G.S. § 28A-18-2(b).

97.

As a direct and proximate result of Defendant KIRKLEY's negligence, gross negligence, and recklessness, MR. STATON and his beneficiaries suffered damages, and will suffer damages in the future, including loss of society, companionship, comfort, guidance, kindly offices and advice of MR. STATON, which entitles the representative of his estate to recover wrongful death damages as set forth in N.C.G.S. § 28A-18-2(b).

98.

As a direct and proximate result of Defendant KIRKLEY's negligence, gross negligence, and recklessness, MR. STATON and his beneficiaries suffered damages, and will suffer damages in the future, including the loss of reasonably expected income, services, protection, care, and assistance of MR. STATON.

99.

The Estate of MR. STATON is entitled to recover damages against Defendant KIRKLEY for MR. STATON's expenses for his care, treatment and

hospitalization incident to the injury resulting in his death, as well as compensation for MR. STATON's lost income, pain and suffering, and reasonable funeral expenses.

100.

The Estate of MR. STATON is also entitled to recover punitive damages from Defendant KIRKLEY for causing the death of MR. STATON through actions that were willful, malicious, and wanton, pursuant to N.C.G.S. § 28A-18-2(b) (5).

101.

Defendant KIRKLEY is liable to the Estate of MR. STATON for his wrongful death that was proximately caused by the illegal actions of Defendant KIRKLEY.

## COUNT IV

**Assault and Battery of Malcolm Staton and Cree Faulkner**

**(Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS)**

102.

Plaintiffs hereby incorporates and re-alleges each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

103.

The unjustified actions of Defendant KIRKLEY by intentionally shooting

multiple times into the Honda striking MR. STATON, and grazing MS. FAULKNER with a bullet, was without legal justification and constitutes an assault and battery under state law.

104.

The bullets fired from Defendant KIRKLEY's weapon struck MR. STATON multiple times, and one of which grazed the right breast of MS. FAULKNER.

105.

Defendant KIRKLEY's use of deadly force was not justified because his actions violated N.C.G.S. § 15A-401(d)(2), which prohibits law enforcement officers from using deadly force for reasons other than defending oneself or other third parties.

106.

At the time Defendant KIRKLEY discharged his weapon, he did not do so in self-defense, or in defense of others, nor did he have an objectively reasonable basis for using deadly force under the circumstances he encountered.

107.

The unjustified actions of Defendants HICKS, WILLIAMS, and LITTLE, which included attempting to block the Honda with their vehicles, and crashing

one of their vehicles into the Honda, amounted to an unwanted touching that also caused MR. STATON and MS. FAULKNER to reasonably fear imminent harm.

108.

The intentional displays of force by Defendants HICKS, WILLIAMS, LITTLE, and KIRKLEY, caused MR. STATON and MS. FAULKNER to suffer serious physical and emotional injuries.

109.

The unjustified actions of Defendants HICKS, WILLIAMS, LITTLE, and KIRKLEY, were undertaken by these Defendants in such a manner that amounts to malice, thereby piercing any entitled of these Defendants to public officer immunity.

110.

The actions of Defendants HICKS, WILLIAMS, LITTLE, and KIRKLEY, acting individually and in concert, was willful, malicious, and reckless, and in violation of clearly established federal and North Carolina law statutory and constitutional law relating to use of force and standards for making an arrest.

111.

The actions of Defendants HICKS, WILLIAMS, LITTLE, and KIRKLEY, were unreasonable under the circumstances, was excessive and inappropriate to the

situation at hand, and exceeded the statutory authority under federal and North Carolina law relating to use of force.

112.

As a direct and proximate result of Defendants HICKS, WILLIAMS, LITTLE, and KIRKLEY's unlawful and unjustified actions as described herein, MR. STATON and MS. FAULKNER are entitled to recover damages for their physical and emotional pain and suffering.

## COUNT V

**Unlawful Arrest and False Imprisonment of Malcolm Staton and Cree Faulkner in Violation of North Carolina Common Law**

**(Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS)**

113.

Plaintiffs hereby incorporates and re-alleges each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

114.

Under North Carolina law, an unlawful arrest and false imprisonment occurs when the police illegally restrain or arrest a person against their will and without probable cause or legal process.

115.

Under North Carolina law, an officer may make an arrest without a warrant

for certain offenses committed in the presence of the officer, as follows:

> An officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense, or has violated a pretrial release order entered under G.S. 15A-534 or G.S. 15A-534.1(a)(2), in the officer's presence.

See N.C. Gen. Stat. § 15A-401(b)(1) – Arrests by Officer Without a Warrant – Offenses in Presence of Officer.

116.

Under North Carolina law, an officer may make an arrest without a warrant for felonies and certain misdemeanor offenses committed out of the presence of the officer, where the officer has probable cause to believe the offense has occurred. See N.C. Gen. Stat. § 15A-401 (b)(2) – Arrests by Officer Without a Warrant – Offense Out of Presence of Officer.

117.

There was no probable cause to arrest MR. STATON, which occurred after he was shot and forced to submit to police custody, including from the time he was transported to the hospital and until his death several days later at the hospital.

118.

There was no probable cause to arrest MS. FAULKNER, which occurred when she was ordered to get out of the vehicle and onto the ground, placed in handcuffs while on the scene, and then transported in handcuffs to UCSO, where

she remained handcuffed until she was interrogated by SBI officers before being released without charges.

119.

The actions of Defendants HICKS, WILLIAMS, LITTLE, and KIRKLEY, by restraining MR. STATON and MS. FAULKNER against their will, and without probable cause or an arrest warrant, was malicious, intentional, and deliberate, and amounted to a false arrest and imprisonment under North Carolina law.

120.

As a direct and proximate result of the actions of Defendants HICKS, WILLIAMS, LITTLE, and KIRKLEY, as described above, MR. STATON and MS. FAULKNER were wrongfully restrained and arrested, causing them to suffer physical and emotional injuries as described in this complaint.

121.

The Estate of MR. STATON, and MS. FAULKNER, are entitled to recover punitive damages from Defendants HICKS, WILLIAMS, LITTLE, and KIRKLEY whose actions were intentional, malicious, willful, and wanton.

## COUNT VI

## Negligence in Violation of North Carolina Civil Law

## (Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS)

### 122.

Plaintiffs hereby incorporates and re-alleges each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

### 123.

Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS each had a duty under state and federal statutory and constitutional law to protect and not infringe upon the rights of MR. STATON and MS. FAULKNER to be free from unreasonable detention, arrest, and seizure.

### 124.

Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS were not justified in their detention and arrest of MR. STATON and MS. FAULKNER, nor were they justified in their use of force towards MR. STATON and MS. FAULKNER.

### 125.

The actions of Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS were in violation of UCSO policies, North Carolina laws governing arrest and use

of force, and in violation of the Fourth Amendment of the United States Constitution.

126.

For purposes of common law negligence, Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS willful disregard of the provisions of N.C.G.S. § 15A-401, establishes that they breached a duty of care owed to members of the public with whom they interact, including MR. STATON and MS. FAULKNER.

127.

For the reasons described above, Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS willful disregard of the provisions of N.C.G.S. § 15A-401, demonstrates that they acted with the requisite degree of malice to pierce or otherwise overcome public official immunity under North Carolina law.

128.

For the reasons described herein, the Estate of MR. STATON, and MS. FAULKER in her individual capacity are entitled to recover compensatory damages from Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS, including damages for their physical and emotional pain and suffering, and property damages for the Honda in the case of MS. FAULKNER.

## COUNT VIII

## *Respondeat Superior* Under North Carolina Law

## (Defendant CATHEY)

### 129.

Plaintiffs hereby incorporates and re-alleges each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

### 130.

Defendant CATHEY, as the Sheriff of UCSO, is liable to Plaintiffs foe the actions and omission of his deputies, Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS, based on the principles of agency and/or *respodeat superior* liability.

### 131.

At all times relevant to the matters complained of herein, Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS were employees and/or agents of Defendant CATHEY, acting under color of law and within the course and scope of their employment as deputies with UCSO.

### 132.

At the time Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS encountered MR. STATON and MS. FAULKNER, as described herein, they were

acting under the direction and control of Defendant CATHEY.

133.

The negligence, gross negligence, and willful and wanton conduct of Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS was the direct and proximate cause of the injuries suffered by MR. STATON and MS. FAULKNER, including the wrongful death damages suffered by MR. STATON, as set forth in NCGS 28A-18-2.

134.

As a direct and proximate result of the joint and several negligent actions and omissions of Defendants HICKS, KIRKLEY, LITTLE, and WILLIAMS, the Estate of MR. STATON, and MS. FAAULKNER, individually, are entitled to recover damages from Defendant CATHEY.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

a) That process issue and that Defendants be served according to the law;

b) That Plaintiffs have a trial by jury;

c) That Plaintiffs have and recover a verdict and judgment against Defendant for all compensatory general, and punitive damages, and for reasonable attorney fees pursuant to 42 U.S.C. § 1988, and for all

such amounts as may be proven before the trier of fact; and

d)      That Plaintiffs have such other and further relief as this Court deems

just and proper under the circumstances.

Respectfully submitted this 14th day of March, 2024.

**THE COCHRAN FIRM – CHARLOTTE**

*/s/Faith Fox*
Faith Fox, Esq. (NC Bar#49729)
N.C. Bar No.: 49729
Sam L. Starks, Esq.
(will move for pro hac admission)
Shean Williams, Esq.
(will move for pro hac admission)
***Attorney for Plaintiffs***

436 East 36th Street
Charlotte, NC 28205
Telephone: 704-762-1588
Fax: 704-980-7554
Email: FFox@CochranFirmCharlotte.com